**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 8, 2024

Catherine A. Gaul
Randall J. Teti
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

Aaron Greenspan
PlainSite
956 Carolina Street
San Francisco, CA 94107

Re: *Twitter, Inc. v. Elon R. Musk, et al.*,
C.A. No. 2022-0613-KSJM

Dear Counsel:

In response to a challenge notice filed under Court of Chancery Rule 5.1 by Non-Party Aaron Greenspan, X Corp. moved for continued confidential treatment of sealed items on the above-referenced docket (the "Rule 5.1 Motion").[1] Ancillary disputes arose after X Corp. filed the Rule 5.1 Motion, prompting X Corp. to move for additional relief (the "Ancillary Motion").[2] This letter decision resolves the Rule 5.1 Motion and Ancillary Motion.

**Legal Framework**

"Under the First Amendment of the United States Constitution and as a matter of common law, the public has a presumptive right of access to judicial records."[3] The public's right of access to court documents and proceedings "is

---

[1] C.A. No. 2022-0613-KSJM, Docket Entry ("Dkt.") 780.

[2] Dkt. 800.

[3] *In re Appraisal of Columbia Pipeline Gp., Inc.*, 2018 WL 4182207, at *1 (Del. Ch. Aug. 30, 2018).

considered fundamental to a democratic state and necessary in the long run so that the public can judge the product of the courts in a given case."[4]  This, in turn, "helps ensure quality, honesty and respect for our legal system."[5]

Court of Chancery Rule 5.1 reflects the Court of Chancery's commitment to the public's right of access.[6]  The default presumption under Rule 5.1 is that court proceedings and filings are matters of public record.[7]  Rule 5.1 allows parties to file documents containing confidential information under seal (a "Confidential Filing"), but requires a public version "for every Confidential Filing, except for an exhibit or lodged deposition."[8]  In public versions of Confidential Filings, parties may redact only information that they believe constitutes "Confidential Information" as defined by Rule 5.1.[9]

"Confidential Information" under Rule 5.1 means information:

> (A) that is maintained confidentially; (B) that is not otherwise publicly available; (C) where public access to the information will cause particularized harm; and (D) where the magnitude of the harm from public access to the

---

[4] *Al Jazeera Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *3 (Del. Ch. Oct. 14, 2013) (internal quotation marks omitted) (quoting *Sequoia Presidential Yacht Grp. LLC v. FE Partners LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013)).

[5] *Horres v. Chick-fil-A, Inc.*, 2013 WL 1223605, at *1 (Del. Ch. Mar. 27, 2013) (internal quotation marks omitted) (quoting *Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984)).

[6] *Chick-fil-A, Inc.*, 2013 WL 1223605, at *2.

[7] Ct. Ch. R. 5.1(a)(1).

[8] Ct. Ch. R. 5.1(f)(1).

[9] Ct. Ch. R. 5.1(b)(2).

> information outweighs the public interest in the information.[10]

This definition balances "the public interest against the harm that public disclosure might entail with respect to sensitive nonpublic information."[11] "The public interest is especially strong where the information is material to understanding the nature of the dispute. In those instances, denial of public access requires a strong justification."[12]

"Any person may challenge the confidential treatment of a Confidential Filing" by filing a challenge notice with the Register in Chancery.[13] That challenge can target documents for which no public filing exists (exhibits and lodged depositions) and documents for which a public filing exists. If no public version of the Confidential Filing exists, then Rule 5.1 sets out a process for filing a public version of the document,[14] and "[t]he timely filing of a public version satisfies the challenge notice."[15] If a public version of the Confidential Filing exists, then any party seeking to maintain the confidentiality of the document must move for continued confidential

---

[10] *Id.*

[11] *In re Boeing Co. Deriv. Litig.*, 2021 WL 392851, at *2 (Del. Ch. Feb. 1, 2021) (internal quotation marks omitted) (quoting *Reid v. Siniscalchi,* 2014 WL 6486589, at *1 (Del. Ch. Nov. 20, 2014)).

[12] *In re Oxbow Carbon LLC Unitholder Litig.*, 2016 WL 7323443, at *2 (Del. Ch. Dec. 15, 2016) (ORDER) (internal quotation marks omitted) (quoting *Al Jazeera,* 2013 WL 5614284, at *7).

[13] Ct. Ch. R. 5.1(g)(1)–(2).

[14] Ct. Ch. R. 5.1(g)(5).

[15] *Id*.

treatment within five days of the challenge notice.[16] "The person seeking to maintain confidential treatment bears the burden of persuading the Court that confidential treatment is warranted."[17]

## Rule 5.1 Motion

This action is long over, but the docket is still publicly available, and it contains information that X Corp. has fought to keep from the public eye. Greenspan is the founder of PlainSite, a legal and financial research website that makes state and federal court filings and other public records available to the public for free.[18] On June 18, 2024, Greenspan filed a notice challenging the confidential treatment of twelve docket entries. Public filings existed for some of the challenged entries but not others.[19] In response, X Corp. filed public versions of the entries for which no public version existed, unredacted information from the others, and moved for continued confidential treatment of selected information.

X Corp. bears the burden of demonstrating that the information it seeks to protect from public view is confidential. The court analyzes whether X Corp. has met its burden as to each challenged docket entry. The outcome is a mixed bag—the Rule 5.1 Motion is granted in part and denied in part.

---

[16] Ct. Ch. R. 5.1(g)(6)(A).

[17] Ct. Ch. R. 5.1(g)(6)(D).

[18] Dkt. 764.

[19] *Id.* (challenging the confidential treatment of Docket Entries 375, 376, 383, 384, 394, 395, 396, 397, 531, 680, 708, and 709).

Docket Entry 513 is the public version of the September 4, 2022 Affidavit of Elon R. Musk.[20] X Corp. redacted two items in that document—the Space X and Tesla domain names. The domain names for Space X and Tesla are not confidential. They are the addresses of the main landing pages for these entities on the internet. The motion is denied as to this document. X Corp. is ordered to file a fully unredacted version of Docket Entry 513.

Docket Entry 514 is the public version of the September 4, 2022 Affidavit of John Shumway.[21] X Corp. requests continued confidential treatment of high-level descriptions of X Corp.'s policies and practices related to internal cybersecurity investigations. Although the descriptions are very general, they have very little to do with the subject matter of the litigation, and it is understandable that Tesla has an interest in keeping information about a security policy confidential. X Corp. has met its burden. The motion is granted as to Docket Entry 514.

Docket Entry 515 is the public version of the September 4, 2022 Affidavit of Alex Stillings.[22] X Corp. requests continued confidential treatment of Stillings's job description and general email security protocols that are widely accepted common practices. For example, one of the redactions obscures generically described criteria for monitoring email traffic: "certain attachments, links, keywords, or other indicia

---

[20] Dkt. 394 (confidential filing).

[21] Dkt. 397 (confidential filing).

[22] Dkt. 395 (confidential filing).

associated with malicious content."[23]  Another redaction obscures the phrase "that trigger the criteria" from the sentence: "Emails that trigger the criteria are blocked or quarantined."[24]  X Corp. has not met its burden.  None of the redacted information warrants confidential treatment.  The motion is denied as to this document.  X Corp. is ordered to file a fully unredacted version of Docket Entry 515.

Docket Entry 587 is the public version of a September 2, 2022 letter to the court from Edward Micheletti, Esquire.[25]  X Corp. seeks to protect the names of two X Corp. employees in the letter.  X Corp. argues that the public has limited interest in personal identifying information of employees, that the company has a policy not to disclose the identities of junior-level employees, and any public interest in this information is "significantly outweighed by . . . the employees' right to privacy and the potential harm associated with public disclosure of names or email addresses."[26]  The letter does not identify email addresses, so these arguments speak to redactions of employees' names.  And it is hard to fathom how disclosing the name of a Twitter, Inc. employee, standing alone, could harm that employee.

X Corp. also relies on this court's decision in *In re Boeing Derivative Litigation*,[27] where the court permitted continued confidential treatment of the

---

[23] Dkt. 395 ¶ 12.

[24] *Id.*

[25] Dkt. 383 (confidential filing).

[26] Rule 5.1 Motion ¶ 14.

[27] *Id.* at ¶¶ 13–14 (citing *In re Boeing Co. Deriv. Litig.*, 2021 WL 392851 (Del. Ch. Feb. 1, 2021)).

names of employees who had raised safety concerns at the company. The court held that "the names of employees who came forward to lodge severe allegations against their employer were not of meaningful public interest, and . . . there were good reasons to respect those employees' privacy."[28] *Boeing* does not stand for the proposition that the names of non-party employees are categorically confidential, and X Corp. does not identify any whistleblower concerns that require continued confidential treatment of the names of the two employees here.

The motion is denied as to this document. X Corp. is ordered to file a fully unredacted version of Docket Entry 587.

Docket Entry 591 is the public version of the September 16, 2022 letter to the court from Kevin R. Shannon, Esquire.[29] X Corp. seeks continued confidential treatment of information regarding the numbers of fake X user accounts. This information has grown stale since 2022, and X Corp. has failed to establish that the company will suffer any harm if it becomes public. The motion is denied as to this document. X Corp. is ordered to file a fully unredacted version of Docket Entry 591.

Docket Entry 650 is the public version of Slack messages between X Corp. employees.[30] Relying again on *Boeing*, X Corp. requests continued confidential treatment of employees' names.[31] But *Boeing* does not justify confidential treatment

---

[28] *Boeing*, 2021 WL 392851, at *3.

[29] Dkt. 531 (confidential filing).

[30] Dkt. 384 (confidential filing).

[31] Rule 5.1 Motion ¶¶ 13–14.

of the names of all employees, as discussed above, and X Corp. provides no other justification for this request. The motion is denied as to this document. X Corp. is ordered to file a fully unredacted version of Docket Entry 650.

Docket Entry 726 is the public version of the October 6, 2022 letter to the court from Kevin R. Shannon, Esquire.[32] X Corp. seeks continued confidential treatment of: the name of an employee and their allegations against another employee; details of a former employee's lawsuit and eventual settlement with X Corp.; and the names of X Corp.'s head of compliance and Chief Information Security Officer. The first category of information is analogous to the information at issue in *Boeing* and warrants continued confidential treatment for the reasons stated in that decision. The second category concerns a confidential settlement and likewise warrants continued confidential treatment. X Corp. has not met its burden as to the third category, which is basic employment history that one might post on LinkedIn. The motion is granted in part and denied in part as to this document. X Corp. is ordered to file a revised public version of Docket Entry 726 that redacts only the name of the employee that made allegations against another employee and any information concerning the nature of those allegations, and details of the former employee's lawsuit and eventual settlement with X Corp.

---

[32] Dkt. 709 (confidential filing).

Docket Entry 776, Exhibit 8 is the public version of the deposition of Todd Doughty.[33] X Corp. seeks to maintain redactions to: certain employees' names and titles; and "information directly concerning the internal operations of the X platform."[34] Again, employees' names and titles do not, standing alone, warrant confidential treatment. The "operations" information is a mix of both historical and current company practices. This historical information, which concerns the structure of X Corp.'s employee teams and the ways in which X Corp. set and tracked certain metrics, "lacks competitive value" that would warrant its continued confidential treatment.[35] The motion is granted in part and denied in part as to this document. X Corp. is ordered to file a revised public version of Docket Entry 776, Exhibit 8 that does not redact employees' names and titles and X Corp.'s past company practices. Descriptions of practices still in use by X Corp. may remain redacted.

Docket Entry 776, Exhibit 9 is the public version of Todd Doughty's Slack messages.[36] X Corp. requests continued confidential treatment of: employees' names; links to shared documents; abbreviated work terms; and employees' thoughts about X Corp. projects. Again, the employees' names, standing alone, do not warrant confidential treatment. The abbreviated work terms and employees' thoughts as to projects are at least two years old; they do not seem sensitive or likely to harm X

---

[33] Dkt. 383, Ex. 8 (confidential filing).

[34] Rule 5.1 Motion ¶ 20.

[35] *Oxbow Carbon*, 2016 WL 7323443, at *3.

[36] Dkt. 383, Ex. 9 (confidential filing).

Corp. if released. They do not warrant continued redaction. The links to shared work documents, if they are still active, could contain more updated, sensitive information. The active links are entitled to continued confidential treatment. The motion is granted in part and denied in part as to this document. X Corp. is ordered to file a revised public version of Docket Entry 776, Exhibit 9 that only redacts active links to shared work documents.

## Ancillary Motion

X Corp.'s newly filed public versions prompted ancillary disputes regarding two documents: the deposition transcript of Jared Birchall, who served as a Rule 30(b)(6) witness for X Holdings I and X Holdings II;[37] and a "Hit Report" of electronic discovery terms applied in this action.[38]

Morgan Stanley raised the Birchall issue. Birchall was one of two persons authorized to represent X Holdings I and X Holdings II—vehicles formed by Musk to acquire Twitter, Inc.—and was a Rule 30(b)(6) witness for those entities on September 21, 2022.[39] On October 3, 2022, X Corp. (then, Twitter) filed a confidential version of Birchall's deposition transcript as an attachment to a motion arguing that Birchall was woefully underprepared to be deposed in a representative capacity.[40]

---

[37] Dkt. 792, Ex. 6 ("Birchall Dep. Tr.").

[38] Dkt. 797, Ex. P.

[39] Birchall Dep. Tr. at 35:2–14.

[40] Dkt. 680.

Birchall mentioned Morgan Stanley during his deposition. Birchall worked for Morgan Stanley before he became a personal financial advisor to Musk in 2016, and he testified to that effect.[41] Birchall also engaged Morgan Stanley to arrange and syndicate debt for Musk and his holding companies in connection with the Twitter acquisition, and he testified to that effect.[42] During his deposition, Birchall was asked who he spoke with at Morgan Stanley for this purpose. In response, he stated the names of three team members (except he got one of their first names wrong).[43] The docket reflects that each of the team members were subpoenaed in this litigation.

On July 17, 2024, X Corp. filed a public version of the Birchall transcript containing redactions after Greenspan challenged its confidentiality.[44] X Corp. did not redact the names of the Morgan Stanley employees from the public version of the transcript. On July 19, Morgan Stanley asked X Corp. to have the Birchall transcript removed from the docket on the ground that the transcript "contain[ed] the names of certain Morgan Stanley employees who are currently nonpublic and which are the subject of a protective order in" a New York federal action.[45]

In response to Morgan Stanley's concern, X Corp. contacted the Register in Chancery to ask the Register to remove the transcript from the docket, which the

---

[41] Birchall Dep. Tr. at 17:7–20:21.

[42] *Id.* at 40:4–16.

[43] *Id.* at 41:18–22, 43:11–19.

[44] Dkt. 792.

[45] Ancillary Motion ¶ 6.

Register in Chancery did.[46]  Later, X Corp. filed a revised public version of the

Birchall transcript, which redacted the names of the three Morgan Stanley

employees.[47]  Four days passed between the filing of the original public version on

July 17 and the revised public version on July 22.[48]  During that period, Greenspan

downloaded the first public version of the transcript and published it on his website.[49]

He did not violate any court orders when doing so.

X Corp. raised the Hit Report issue.  X Corp. failed to redact Elon Musk's Tesla

and SpaceX email addresses, among other information,[50] from the public filing of the

Hit Report.  After Greenspan identified Musk's work email addresses in his

opposition to the Rule 5.1 Motion filed on July 21, 2024 (the "Rule 5.1 Motion

Opposition"),[51] X Corp. realized its mistake.  On the morning of July 22, X Corp.

informed Greenspan that it had unintentionally failed to redact the email addresses

from the Hit Report.[52]  X Corp. requested that Greenspan ask the Register in

Chancery to reject the Rule 5.1 Motion Opposition, and asked Greenspan to submit a

---

[46] *Id.* at ¶ 7.

[47] Dkt. 799.

[48] *Compare* Dkt. 792 *and* Dkt. 799.

[49] Ancillary Motion ¶ 12.

[50] *Id.* at ¶ 11 (referring to Musk's email addresses and "other names and email addresses of certain individuals who were not named in this action").

[51] Dkt. 798.

[52] Ancillary Motion ¶ 9.

public version of the filing, removing reference to Musk's email addresses.[53] Greenspan refused,[54] which prompted the Ancillary Motion.

The Ancillary Motion seeks an order: directing the Register in Chancery to remove the current public version of the Hit Report from the docket; permitting X Corp. to file an amended public version of the Hit Report; and directing the Register in Chancery to treat the Rule 5.1 Motion Opposition as a Confidential Filing under Court of Chancery Rule 5.1.[55] X Corp. also asks the court to order Greenspan to remove from his website the current version of the Rule 5.1 Motion Opposition, the Hit Report, and the lesser-redacted version of the Birchall transcript.[56]

Greenspan opposes the Ancillary Motion and asks that X Corp.'s counsel be sanctioned for engaging in purportedly improper *ex parte* communications with the Register in Chancery.[57]

The Ancillary Motion is granted in part and denied in part. The Hit Report contains personal and work email addresses. The court previously held that personal email addresses can be filed under seal.[58] But Greenspan has demonstrated that

---

[53] *Id.* at ¶ 10.

[54] *Id.*

[55] *Id.* at ¶ 13.

[56] *Id.*

[57] Dkt. 802 ("Ancillary Motion Opp."), 12–13.

[58] *Twitter, Inc. v. Musk*, 2023 WL 4995738, at *1 (Del. Ch. Aug. 4, 2023) (granting motion for continued confidential treatment of certain "sensitive personal information" including, "personal contact information," such as personal email addresses and cell phone numbers).

Musk's work email addresses are publicly available.[59] They are not confidential. The Hit Report also contains employee names, which are not confidential for the reasons stated above. Accordingly, Docket Entry 797 shall be removed from the docket. X Corp. is granted leave to refile a revised public version of Docket Entry 797 that redacts only personal email addresses from the Hit Report (Exhibit P). The redactions to Exhibits Q, R, S, T, and U shall remain.

X Corp.'s concern with the Rule 5.1 Motion Opposition is that it contains two of Musk's email addresses. As stated above, X Corp. has failed to establish that Musk's publicly available work email addresses constitute Confidential Information. X Corp.'s request to treat the Rule 5.1 Opposition as a Confidential Filing is denied.

X Corp.'s request for an order compelling Greenspan to remove the Rule 5.1 Motion Opposition, Hit Report, and lesser-redacted version of the Birchall transcript from PlainSite goes too far. X Corp. made a mistake. This happens. And the court permits parties to fix filing mistakes from time to time. But Greenspan did not make a mistake. He did nothing improper by accessing publicly filed documents. In these circumstances, it would seem an overreach to issue a mandatory injunction compelling Greenspan to remove information from his website that he created (the Rule 5.1 Opposition) or lawfully obtained (the Hit Report and Birchall transcript).[60] This request is denied.

---

[59] Ancillary Motion Opp., 4–5.

[60] Plus, Morgan Stanley's stated concerns are questionable. The federal protective order on which Morgan Stanley relied (Ancillary Motion, Ex. A) was unopposed. It

Finally, Greenspan's motion to sanction X Corp.'s counsel for communicating with the Register in Chancery is off base. X Corp. contacted the Register to request that it reject the original public version of the Birchall transcript so that X Corp. could refile a revised public version containing Morgan Stanley's proposed redactions.[61] These communications do not constitute inappropriate *ex parte* communications with the court. This request is denied.

This ruling creates an admittedly unusual outcome, where the court is permitting the confidential filing of information that the court acknowledges is publicly available elsewhere—on Greenspan's website. This unusual outcome is driven by highly unusual circumstances, which seem unlikely to occur again.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc: All counsel of record (by *File & ServeXpress*)

---

cites to a New York federal decision, *Rowe v. Google LLC*, 2022 WL 4467628, at *2 (S.D.N.Y. Sept. 26, 2022), which is distinguishable. *Rowe* addressed confidentiality challenges to redactions protecting non-party employee compensation information. The decision allowed the movant to redact the names of the employees but not their compensation information, which was relevant to the subject matter of the dispute. Here, it is the name of the Morgan Stanley employees standing alone that Morgan Stanley seeks to protect. Those employees' connection to the case is already public, given that their names appear on docketed subpoenas.

[61] Ancillary Motion ¶ 7.